UNITED STATES DISTRICT COURT
NORTHERN DISTICT OF ILLIONIS EASTERN DIVISION

THEODIS CHAPMAN AND PATRICK NELSON )
)
    Plaintiffs, )
)
    v. )    Case # 1:17-CV-08125
)
)
AFSCME COUNCIL 31, LOCAL 3477 )
)
    Defendants, )

## PLAINTIFF'S SECOND AMENDED COMPLAINT
## JURISDICTION AND VENUE

1. This court has jurisdiction over Plaintiffs' claims under: Title VII of the Civil Rights Act of 1964;, 42 U.S.C. 1981, 42 U.S.C. 1983; Count 4, Pursuant to 28 U.S.C 1331,

2. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. 1367.

3. This action is brought pursuant to the Civil Rights Act of 1866, 1870, Title VI of the Civil Rights Act of 1964, 42 U.S.C. 1981, 1983, the equal protection and due process clauses of the Fifth and Fourteenth Amendments, U.S. Constitution, and Illinois Constitution.

4. The jurisdiction is conferred on Plaintiffs' federal claims upon this United States District Court by 28 U.S.C. 1331, 1343, 42 U.S.C. 2000e-5(f), 42 U.S.C. 1981,1983, 1985. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. 1367.

5. Venue is proper in this District pursuant to 28 U.S.C. 1391 because the events giving rise to this claim occurred in the District.

6. The Plaintiffs have met the administrative prerequisites prior to institution these legal proceedings. The named Plaintiffs filed their charge of race discrimination before the U.S. Equal Employment Opportunity Commission (EEOC).

The EEOC issues right to sue letters dated August 8, 2017 to Plaintiffs Patrick Nelson and Theodis Chapman. Plaintiffs Nelson and Chapman received in the mail the right to sue letters on August 12, 2017. The defendant violated our constitutional rights under the fourteenth amendment and title 7 to the United States constitution and also brings claims for malicious acts, intentional infliction of emotional distress, conspiracy under Illinois law, and discrimination.

## **COMPLAINT AT LAW**

Now comes the Plaintiffs, THEODIS CHAPMAN AND PATRICK NELSON, complaining of the Defendants, AFSCME COUNCIL 31, LOCAL 3477, and states as follows:

7. At all relevant times the Plaintiff, Theodis Chapman, (hereinafter "Chapman") resided at 16341 Oxford Drive, Markham, Illinois and was employed by the County of Cook as a probation officer.

8. Chapman has been a dues paying member of the Defendants, for 15 years and is entitled to proper and timely representation from the Defendant.

9. At all relevant times the Plaintiff, Patrick Nelson, (hereinafter "Nelson") resided at 2433 W. Washburn, Chicago, Illinois and was employed by the County of Cook as a probation officer.

10. Nelson has been a dues paying member of the Defendants for 17 years and is entitled to proper and timely representation from the Defendants.

11. At all Relevant times the Defendant(s), American Federation of State, County, and Municipal Employee's was domiciled at: 1625 L Street, N.W. Washington, DC 20036-5687

12. At all Relevant times the Defendant(s), AFSCME COUNCIL 31, was domiciled at

    Chicago Office: 205 N. Michigan Ave. Suite 2100 Chicago, IL 60601

    Springfield Office: 615 South Second St. Springfield, IL 62704

13. At all Relevant times the Defendant(s), AFSCME LOCAL 3477, was at:

    1100 Hamilton, 2nd floor, Chicago, IL 60608

14. We, the Plaintiffs, allege that in addition to being third-party beneficiaries to the contract between AFSCME and the Chief Judge, we are first-party beneficiaries of the contract between AFSCME and its members known as the Promisee to enforce the provision of the CBA on our behalf. The CBA is not meant to benefit AFSCME but to protect members of the union.

*(copy of the contract filed with the court)*

15. At all relevant times the Defendants, AFSCME COUNCIL 31, LOCAL 3477, (hereinafter "Union") was an organization which collected dues from the Plaintiffs and under contract with the County of Cook as the sole representative for the probation officers of Cook County.

16. The Union was under a duty to properly and timely represent and file grievances for the Cook County probation officers, including the Plaintiffs, when the officers required representation. Mr. Chapman was abruptly removed in November 2016 from a very impactful Juvenile Court Program that helped over 600 youth obtain their high school diplomas and/or GEDs; and made the communities where the youth lived and the City of Chicago a safer place. The youth in the program were often transformed behaviorally and socially, thus reducing their criminogenic behavior and reoffending.

17. Due to his being a co-plaintiff in the Jordan v. Evans (1:15-cv-05907, 2015) lawsuit, as a whistleblower he helped expose systemic discriminatory practices from documents and grievance cases he assisted with as a Certified Union Steward and as a former member of the Locals Executive Board

18. Mr. Chapman requested (10/15/16 also see exhibit. 1B, 2B) to be permitted to assume an alternate position in the jumpstart unit he was removed from, but he was further treated in a discriminatory manner; whereby, the department informed him that no positions would be available after his forced removal. The department lied to Mr. Chapman and instead assigned three officers to Mr. Chapman's former unit. Two of the officers had less seniority and the third officer was a white male.

19. Mr. Chapman and Nelson have been intentionally denied compensatory time (8/29/14) which they earned from working with juvenile delinquents beyond his normal work hours unlike their white counterparts who were not denied compensatory time for their work with juvenile delinquents beyond their normal work hours. The contract states that a probation officer can get comp-time or be allowed to participate in outside events if they are a part of our craft. Union did nothing

20. Mr. Chapman and Nelson have been denied seniority rights and were removed from their previous position and were replaced with two less senior officers (11/13/15) Union did nothing.

21. Mr. Chapman was discriminated against after being removed from his previous position. He was never offered a similar position that became available which was assumed by a white officer.

22. Mr. Chapman and Mr. Nelson became aware of the un-posted vacancy by the white officer whom informed Mr. Chapman he received a call from DCPO Donna Neal asking if he wanted the position. Mr. Chapman and Mr. Nelson were never afforded a phone call, or written notice that a vacancy in their former unit was available, and if they were interested in returning to their previous unit to assume a newly vacant/created non-posted position (11/9/16). Union did nothing.

23. Mr. Nelson and Mr. Chapman filed grievances with their union AFSCME Council 31, Local 3477, claiming that they were denied compensation for time spent doing job-related training out of state, when white probation officers did receive compensation for similar out of state training. (exhibit: 1-B, 2-B). The grievances were not pursued and subsequently ignored by the defendants.

24. Mr. Nelson has been intentionally forced to use unnecessary compensatory time for which he earned from his working with juvenile delinquents beyond his normal work hours unlike his white counterparts who were not forced to use unnecessary compensatory time for the same. (exhibit: 1-B, 2-B).

25. Mr. Nelson was discriminated against after being removed from his previous position; he was never offered a similar position that became available in his previous unit which was replaced by a white officer. (11/9/16).

26. Despite attempts by Plaintiff Chapman/ Nelson to not only notify the union AFSCME Council 31, Local 3477 of these egregious actions levied at them by the employer and its designees, the union refused to act, refused to seek injunctive relief, and refused to enforce the provisions of the contract on his behalf.

27. When Mr. Nelson needed union support, like so many African American Juvenile Probation Officers that preceded him, the union refused to provide assistance, to a full dues paying member for over 17 years.

28. The union, AFSCME Council 31, Local 3477 committed: a breach of contract, a breach of trust, a breach of fiduciary responsibilities, fraud, bait and switch, false advertisement, and moral hazard by refusing to come to the aid of its full dues paying active member, Plaintiff, Chapman/Nelson.

29. If the union would have provided the services they agreed they would have with haste, enforced the provisions they stated they would, and honored the contract they signed and entered into with Mr. Nelson upon his employment in 2001. Mr. Nelson would have reasonably been protected from the daily ongoing discrimination, bias, contractual provision violations by the employer and his designees, denied seniority rights, denied advancement, denied pay, and from subjection to harsher working conditions than his white co-workers.

# THE PLAINTIFFS' ALLEGE THE DEFENDANT DISCRIMINATED AGAINST THE PLAINTIFFS' WHEREBY THE DEFENDANT COMMITTED

## COUNT 1

Defendants discriminated against the Plaintiffs through voluntary actions in violation of the CBA (constitution) the defendants have with the plaintiffs:

30. This court has jurisdiction over Plaintiffs' claims under: Count 2, Title VII of the Civil Rights Act of 1964; 42 U.S.C. 1981, 42 U.S.C. 1983; Count 4, Pursuant to 28 U.S.C 1331,

31. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. 1367.

32. This action is brought pursuant to the Civil Rights Act of 1866, 1870, Title VI of the Civil Rights Act of 1964, 42 U.S.C. 1981, 1983, the equal protection and due process clauses of the Fifth and Fourteenth Amendments, U.S. Constitution, and Illinois Constitution.

33. The jurisdiction is conferred on Plaintiffs' federal claims upon this United States District Court by 28 U.S.C. 1331, 1343, 42 U.S.C. 2000e-5(f), 42 U.S.C. 1981,1983, 1985. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. 1367.

## DEFENDANTS COMMITTED FRAUD:

  i. AFCME Council 31, Local 3477 misrepresented matters of fact. The Defendants mislead the Plaintiffs by concealing what should have been disclosed regarding the parts and provisions of the contract the defendants would not honor, before binding the plaintiff to many years of deducted dues with no assurance of their purported rights listed in the contract (CBA/Collective Bargaining Agreement).

  ii. AFSCME Council 31, Local 3477 was dishonest and in fact made false statements to the Plaintiffs of a material fact; AFSCME Council 31, Local 3477 had prior knowledge in parts of the contract they entered into with the Plaintiffs upon their employment that there were statements and provisions written that in fact were untrue, AFSCME

Council 31, Local 3477 intentionally deceived the Plaintiffs who became targets of the employer and his designee's due to their increased union activities and as AFSCME trained union stewards; AFSCME Council 31, Local 3477 created justifiable reliance as the exclusive representative only to leave the Plaintiffs in their most vulnerable state with no representation or protection from the retaliatory attacks of discriminatory nature directed specifically to the Plaintiffs causing injury to the Plaintiffs as a result.

iii. AFSCME Council 31, Local 3477 had prior knowledge that provisions and language in the contract would not be enforced on behalf of the Plaintiffs, both of whom are African American. Due to the union's failure to act on behalf of previous African American Probation Officers in the same and similar situation as the Plaintiffs, where they also were targeted by their employer and his designees as a result of their race and union involvement. AFSCME Council 31, Local 3477 knowingly made false statements of exclusive representation and protections to deceive the Plaintiffs from seeking their own protection and under false pretenses granting the union access to their pay in the form of dues deductions to be used not for the Plaintiffs benefit but that of the unions. AFSCME Council 31, Local 3477 false statements as this lawsuit has presented the Defendants intent to deprive the Plaintiffs of their property and their rights.

iv. The Defendants AFSCME Council 31, Local 3477 knowingly took advantage of the Plaintiff's, the "unions" false statements of fact listed in the CBA, and caused the Plaintiffs irreparable injury perpetrated by the employer and his designees, that left both Plaintiffs in a worse position than they were before the fraud.

v. We the Plaintiffs are stating that conspiracy, among other things, violated said provision and we are stating that the Defendants themselves acted to deny the rights of

      African Americans. One of many examples is that the Union worked with management to create something called a last chance agreement. Mike Rohan, former Executive Director of Juvenile Probation, under oath at a deposition hearing stated that the last chance agreement was the union's idea. A last chance agreement is not a part of the negotiated collective bargaining agreement (CBA). With the last chance agreement African American were fired without any due-process.

    vi. The Labor Management Reporting and Disclosure Act gives us the right to sue. The LMRDA and the Union Members' Bill of Rights state that union members have these rights. African Americans could not benefit from any of them because the Defendants refused to do anything. Members are protected from improper union discipline. Due process is required in internal union disciplinary hearings, including: a) the right to specific, written charges; b) the right to confront and cross-examine accusers; c) adequate time to prepare a defense; d) the right to a full and fair hearing and a decision based on the evidence.

34. We the Plaintiffs emailed AFSCME Council 31s attorneys and asked on many occasions about the status of our yet to be assigned arbitration cases with no answer. We were told that we could not get other legal counsel because AFSCME Council 31 is our exclusive legal representative; this is a violation of our rights to due-process and our constitutional rights.

35. In our complaint we do not just sight that the CBA was violated, but that it was not used, enforced or interpreted by the Defendant for the benefit of African Americans. This complaint is far beyond a breach of contract.

36. The Defendant's attorneys state " Defendant was in breach of its contractual duties when it… As the sole representative…[failed ] to properly pursue stage V/arbitration grievances for minority officers, including Plaintiffs" This statement or quite in not correct.

The Defendants refuse to apply the contract toward the benefit of African Americans. This was an active choice to do less and do nothing. We have email proof in which the Defendant put on an adequate, even pinnacle, defenses for whites. The Defendants did not say that they were the sole representative but that they were the sole legal representative, implying we could have no other. Then later in an email from Scott Miller. attorney with Council 31, he claims that they don't work for us. This would be considered a bait and switch.

37. We submit to the court our plea, if not here than where do we get justice? Our concerns are not so much for ourselves but for our children and the children on the streets of Cook County. This is a broken system that needs fixing if African American Officers can't get the due-process and protection they need to do their jobs, then who will do it? Concerning the case Frederickson v. City of Lockport, we the Plaintiffs are not rich land owners and we cannot afford to file multiple suits for business reasons. Our case is not about wealth but something much more intrinsically important. For that reason we don't think this case applies.

38. **This claim can be boiled down to human rights.** Is it a human right to be heard and grievances settled in a respectful way? Even as we write these words, we the Plaintiffs wait for Defendants to acquiesce for our plea to be heard.

39. The plaintiffs, claim should not be surmised as just a breakdown of communication, or disgruntled grievant's' displeasure with the unions formality. On the contrary this claim should be viewed in the same context as human and civil rights violations.

40. The union has an obligation under title 7, U.S. Constitution, and under its own CBA (ARTICLE XX, 31, Sect. 9. No Discrimination), to treat all of its members in a non-discriminant manner; regardless of race, color, sex, age, religion, disability, national origin, ancestry, sexual orientation, marital status, political affiliation and/or beliefs, or activity, or non-activity on behalf of the Union.

41. Plaintiffs Chapman and Nelson who are African Americans and members of the union, are entitled to not be treated in a discriminant manner; and the union of which they have been longstanding members should cease any further discrimination against both plaintiffs; thereby, addressing their complaint, past due grievances, and settlement request in an amicable manner.

***Ashcroft v. Iqbal***, 556 U.S. 662 (2009 does not apply in this case. This case has little to do with top government officials who were not liable for the actions of their subordinates without evidence that they ordered the allegedly discriminatory activity. We do have evidence that proves our case.

*Defendants are in violation of The Railway labor act: Steele v. Louisville &N.R. Co., 323 U.S.192 (1944) As the exclusive bargaining representative of our craft the duty to represent all the employees of probation without discrimination. The courts have jurisdiction to protect the minority of the craft or class from the violation of such obligation P.323 U.S. 199.*

*<u>The corresponding duty imposed on the defendants is clear. P>323 U.S. 202. So long as labor unions assume to act as the statutory representative of a craft, it cannot rightly refuse to perform the duty, which is inseparable from the power of representation conferred upon it, to represent the entire membership of the craft. While the statute does not deny to such a bargaining labor organization the right to determine eligibility to its membership, it does require the union, in collective bargaining and in making contracts with the carrier to represent nonunion or minority union members of the craft without hostile discrimination, fairly, impartially, and in good faith. Wherever necessary to that end, the union is required to consider requests of nonunion members of the craft and expressions of their views with respect to collective bargaining with the employer and to give to them notice of and opportunity for hearing upon its proposed action P. 323 U.S. 204.</u>*

*The right asserted by the petitioner, to a remedy for breach of the statutory duty of the bargaining representative to represent and act for the members of a craft without discrimination against Negroes solely because of their race, is claimed under the constitution and a statute of the United States; and the adverse decision of the highest court of the state is reviewable here under S 237(b) of the Judicial code. P. 323 U.S. 204.*

## **DEFENDANTS COMMITTED BAIT AND SWITCH**

42. AFSCME Council 31, Local 3477 "baited" the Plaintiffs through the advertising of a collective bargaining agreement that was supposed to protect the Plaintiffs from job hazards that the employer and/or his designees may create in the course of their employment. The "union" was aware of the loopholes in the CBA that had been deceptively used to avert their responsibility to act on behalf of the Plaintiffs. When the Plaintiffs discovered that the statements and provisions advertised in the contract were false and expressed their concerns to the union, the union abhorrently refused to provide to the Plaintiffs the same or similar protection as they did for similar persons of a different race.

*Under this act the plaintiffs request relief. 323 U.S. 205. The Railway Labor Act contemplates resort to the usual judicial remedies of injunctive and award of damages when appropriate for breach of the duty imposed by the statute on a union representative of a craft to represent the interests of all it members P.323 U.S 207.*

*Butt v. United Brotherhood of Carpenters & Joiners of America No. 12-1331 United States Court of Appeals, Third circuit. Argued January 7 2013. States Title VII makes it unlawful for a labor organization to "discriminate against" or "fail or refuse to refer for employment any individual , in any way which would deprive or tend to deprive any individual of employment opportunities… because of such individual's race, color, religion, sex, or national origin.42 U.S.C. S 2000e-2©(1)-(2)*

Submitted as evidence EEOC complaint marked as 1-B and 2-B
The EEOC assigned a mediator early in the process he said, that the union is unwilling to negotiate. Therefor I am passing this case on to be investigated. The investigator stated that the union is unwilling to negotiate and submitted to use the right to sue letter.

### **COUNT 2**

Under section 706 or 717 of the Civil Rights Act of 1964 [42 U.S.C. 2000e–5, 2000e–16] against Defendants who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) prohibited under section 703, 704, or 717 of the Act [42 U.S.C. 2000e–2, 2000e–3, 2000e–16], and provided that the complaining party cannot recover under section 1981 of this title, we the complaining party may recover compensatory and punitive damages as allowed in subsection (b), in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from the respondent.

Defendants violate coded 42 U.S. Code § 1981a - Damages in cases of intentional discrimination in employment. *Submitted as evidence EEOC complaint marked as 1-B and 2-B.*

The EEOC assigned a mediator early in the process he said, that the union is unwilling to negotiate. Therefore I am passing this case on to be investigated. The investigator stated that the union is unwilling to negotiate and submitted to use the right to sue letter.

## COUNT 3

Defendants violated U.S. Code › Title 42 › Chapter 21 › Subchapter I › § 1983 42 U.S. Code § 1983 - Civil action for deprivation of rights. *Submitted as evidence EEOC complaint marked as 1-B and 2-B*

The EEOC assigned a mediator early in the process he said, that "the union is unwilling to negotiate; Therefore, I am passing this case on to be investigated." The investigator also stated that "the union is unwilling to negotiate and submitted to us our right to sue letter."

## COUNT 4     BREACH OF CONTRACT

43. Defendants refuse to process certain claimed grievances and advance the grievances above the Step IV contractual setting;
44. Defendants refused to process Step V/arbitration grievances in a timely manner;
45. Defendants refused to properly prepare Step V/ arbitration grievances when they failed to communicate with the probation officers prior to the day of the hearing;
46. Defendants refused to collect and process evidence that would support the probation officer's grievances. (02/16/2017). Representative Scott Miller of AFSCME Council 31 met with Mr. Chapman and Mr. Nelson. During that meeting he opened a file and claimed that this was all that was in the file. The file was empty, and Mr. Miller stated, "we have received nothing from your local."

Plaintiff Nelson informed Scott Miller that he was the one who sent the information that should have been the content of the file and that he would resend the information. The point of this is that the meeting was to be a strategic meeting before the arbitration and the attorney, Scott Miller was not prepared. Knowing he was unprepared, why did he not email the Defendants prior to the meeting to let them know that he had no information? The meeting was downtown and a complete waste of the Plaintiff's time and money. Defendants conspired with the Probation Officer's employer to allow disparate treatment in violation of the Civil Rights Act of 1866, 1870, Title vii of the Civil Rights Act of 1964,42 U.S.C. 1981, 1983 and the equal protection and due process clauses of the Fifth and Fourth amendments of the U.S. Constitution and the Illinois Constitution;

47. As the sole representative, the Union refused on the basis of discrimination to properly pursue Stage v/ arbitration grievances for minority officers, including Plaintiffs. Please see evidence marked 1-B and 2-B EEOC Files

48. As a direct and proximate cause of the Defendant's breach of duty the Plaintiffs, Theodis Chapman and Patrick Nelson have lost seniority rights, job promotions wages, and vacation and comp-time hours. *Submitted as evidence EEOC complaint marked as 1-B and 2-B*

    The EEOC assigned a mediator early in the process he said, that "the union is unwilling to negotiate; Therefore, I am passing this case on to be investigated." The investigator also stated that "the union is unwilling to negotiate and submitted to us our right to sue letter."

### COUNT 5   BREACH OF FIDUCIARY RESPONSIBILITY

49. Refused to collect and process evidence that would support the Probation Officer's grievances; Defendants have shown that they do not care to act in our best interests even though they have a duty to do so. This claim is evidence the grievances or correspondence have not moved at all. At this time we are dues paying members. To this day we would like to hear from the union one way or the other about our concerns. We have heard nothing. We have asked to pay for our own grievances/arbitration

if cost is the problem. We have gotten no answers. AFSCME council 31 pursued one grievance to arbitration and won the arbitration but this was after we the Plaintiffs filed charges with the EEOC.

*Submitted as evidence EEOC complaint marked as 1-B and 2-B*

The EEOC assigned a mediator early in the process he said, that "the union is unwilling to negotiate; Therefore, I am passing this case on to be investigated." The investigator also stated that "the union is unwilling to negotiate and submitted to us our right to sue letter."

### COUNT 6   BREACH OF TRUST

50. Defendants conspired with the Probation Officer's employer to allow disparate treatment in violation of the Civil Rights Act of 1866, 1870, Title VII of the Civil Rights Act of 1964, 42 U.S.C. 1981, 1983 and the equal protection and due process clauses of the Fifth and Fourteenth Amendments of the U.S. Constitution and the Illinois Constitution;

51. As the exclusive representative, the Union refused to properly pursue Stage V / arbitration grievances for minority officers, including the Plaintiffs.

52. As a direct and proximate cause of the Defendant's breach of duty the Plaintiffs, THEODIS CHAPMAN AND PATRICK NELSON, have lost seniority rights, job promotions, wages, vacation and comp time hours. Please see exhibit C-3 deposition in another case Jordan V Chief Judge Evans. Mike Rohan admits that the idea of a last chance agreement was the union's idea. *Submitted as evidence EEOC complaint marked as 1-B and 2-B.* The EEOC assigned a mediator early in the process he said, that "the union is unwilling to negotiate; Therefore, I am passing this case on to be investigated." The investigator also stated that "the union is unwilling to negotiate and submitted to us our right to sue letter."

### COUNT 7   FALSE ADVERTISEMENTS

53. AFSCME Council 31, Local 3477 used false, misleading, or unproven information to advertise the Collective Bargaining Agreement (CBA) to the Plaintiffs that did not honestly disclose the true facts

that the union had a history and past practice of not honoring the CBA as it applies to African Americans in similar situations as the plaintiffs. AFSCME Council 31, Local 3477, not by mistake but intentionally, used false and deceptive advertising by making false claims of protection and provisions that the CBA and the union would provide the Plaintiffs. As evidence we submit exhibit D- 4. The former President of the local writes to the President of the union stating concerns to this day no answer. *Submitted as evidence EEOC complaint marked as 1-B and 2-B*

The EEOC assigned a mediator early in the process he said, that "the union is unwilling to negotiate; Therefore, I am passing this case on to be investigated." The investigator also stated that "the union is unwilling to negotiate and submitted to us our right to sue letter."

## COUNT 8    MORAL HAZARD

58. AFSCME Council 31, Local 3477 by their refusal to represent, protect, and advocate for the Plaintiffs, both of whom have been full share dues paying members for over 15 years, subjected the Plaintiffs to moral hazard after the union deducted money from their pay for the past 15 years but refused to deliver the protections they proclaimed after the Plaintiffs signed their representative form, when the employer and his designees violated several contractual provisions that were specifically targeted at the Plaintiffs.

59. AFSCME Council 31, Local 3477 permitted the Plaintiffs to bear more risks as AFSCME trained union stewards promoting the AFSCME union brand, but with no protections from retaliation. AFSCME Council 31, Local 3477 knowingly withheld from the Plaintiffs their risk and the union's benefit, whereby, the plaintiffs were subjected to bear the cost of promoting the union. However, after the employer and his designees began to retaliate against the plaintiffs, AFSCME Council 31, Local 3477 being insulated from employment risk, provided no protection, aid, or assistance for the Plaintiffs.

60. AFSCME shielded itself at the expense of the Plaintiffs from the consequences of employer/designee retaliation. Unlike the Plaintiffs, AFSCME Council 31, Local 3477 knew their positions were secure and beyond the discretion of the employer and his designees.

61. The Plaintiff's former supervisor in 2013 was being recruited by management for promotion to Deputy Chief Probation Officer (DCPO). The supervisor began to mimic management's behavior by attempting to find fault where none existed, and by scrutinizing the Plaintiffs more than other employees in the unit who were not union involved. The supervisor then crossed the line due to the intentional misrepresentation and false statements placed in their performance appraisals; subsequently the plaintiffs filed grievances, with merit and supplemental documentation, and affidavits accounting for their true work performance. The union refused to intervene, and simply ignored both Mr. Chapman and Mr. Nelson's issues. After two years of delay and the union's refusal to act, the Plaintiffs went to the EEOC and filed complaints to get the Union to forward their grievance to arbitration, which the Plaintiffs won and were awarded merit pay.

62. The union baited both Plaintiffs into believing at arbitration that their 2013, 2014, and 2015 grievances regarding their performance appraisals would be combined due to the negative impact perpetrated by the same supervisor/management trainee, using the same performance tool. The union switched their position after the arbitration.

63. To date the union has refused to resolve Mr. Chapman's 2014 performance appraisal grievance for arbitration and Mr. Nelsons' performance appraisal grievance for 2014 and 2015; however the supervisor/management trainee was protected by management due to nepotism and the supervisor being recruited at the time by management to become a DCPO. *Submitted as evidence EEOC complaint marked as 1-B and 2-B.* The EEOC assigned a mediator early in the process he said, that "the union is unwilling to negotiate; Therefore, I am passing this case on to be investigated." The

investigator also stated that "the union is unwilling to negotiate and submitted to us our right to sue letter."

**COUNT 9 DEFENDANTS USED DECEPTIVE PRACTICES**

67. AFSCME Council 31, Local 3477 has demonstrated its own remuneration as its primary motivation for its decision to forgo protections promised the Plaintiffs without regard for the effects on, or risks to the Plaintiffs for the purpose of obtaining money from the Plaintiffs in the form of dues, in essence taxation without representation and/or virtual instead of actual representation. AFSCME Council 31 and Local 3477 deceptively took the Plaintiffs property, without providing the service that their property was afforded as collateral.

68. The employer Chief Judge Timothy Evans and his management designees retaliated against Nelson Chapman by intentionally (arbitrarily) removing them and reassigning them to another position (Field Probation Officer). The department neglected to properly train the Defendants, Chapman and Nelson, by providing only two days of field officer training using only visual PowerPoint, which did not adequately reflect the Administrative Office of Illinois Courts (AOIC) mandated 60-day mandatory training for Probation Officers. When this was reported to the union and the grievance process started, nothing was done and nothing has been done. The union again refuses to respond.

69. Mr. Chapman and Mr. Nelson had never been field officers; they were specialized officers from the date of their employment up until they were forced from their positions by the employer and his designees. Thus both Mr. Chapman and Mr. Nelson requested more training due to similar circumstances whereby the Juvenile Probation department committed the same intentional act of inadequately training Anthony Jordan in his new position as an (EM) electronic monitoring officer. Jordan v. Evans (1:15-cv-05907, 2015),

70. Anthony Jordan was a Juvenile Probation Officer who was falsely accused by the employer and his designees, of failing to perform his duties, when while he was off duty a client committed a violent act

that made the news. Anthony Jordan was subsequently framed and falsely blamed by the employer and his designees, suspended without pay, and thus terminated.  Knowing this, Mr. Chapman and Mr. Nelson thwarted the departments attempt to set he and Mr. Nelson on the path to the same frame and fate. Both requested in writing to be provided more training citing the Anthony Jordan frame up as just cause for the request. *Submitted as evidence EEOC complaint marked as 1-B and 2-B*

The EEOC assigned a mediator early in the process he said, that "the union is unwilling to negotiate; Therefore, I am passing this case on to be investigated."  The investigator also stated that "the union is unwilling to negotiate and submitted to us our right to sue letter."

WHEREFORE the Plaintiffs, THEODIS CHAPMAN AND PATRICK NELSON, prays for a sum of money against the Defendants, AFSCME COUNCIL 31, and LOCAL 3477, in an amount to be determined at trial, and any such other relief as this court may award.

Respectfully submitted,				Respectfully submitted,


By: _____   By: _____
       THEODIS CHAPMAN					PATRICK NELSON