IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THEODIS CHAPMAN and PATRICK NELSON, | ) ) ) |
| *Plaintiffs*, | ) ) No. 17 C 8125 |
| v. | ) ) Hon. Virginia M. Kendall |
| AFSCME COUNCIL 31, LOCAL 3477, | ) ) |
| *Defendant*. | ) ) ) |

# MEMORANDUM OPINION AND ORDER

Plaintiffs Theodis Chapman and Patrick Nelson filed this *pro se* action against Defendant American Federation of State, County, and Municipal Employees (AFSCME) Council 31, Local 3477 asserting various claims under federal and state law purportedly related to the Union's representation of Plaintiffs in grievance processes initiated against their employer. (Dkt. 52). Defendant filed a Motion to Stay Proceedings or, Alternatively, to Dismiss Plaintiffs' Second Amended Complaint (Dkt. 53), seeking to stay proceedings in this case pending resolution of Plaintiffs' ongoing suit for race discrimination against their employer or in the alternative to dismiss all claims pursuant to Federal Rules of Civil Procedure 12(b)(6), 8(a), 10(b), 41(b), and 9(b). (Dkt. 53). After a hearing on Defendant's Motion, the Court denied the motion to stay. (Dkt. 56). For the following reasons, the Court grants Defendant's Motion to Dismiss the Second Amended Complaint (Dkt. 53).

## BACKGROUND

### I.  Procedural Background

On November 9, 2017, Chapman and Nelson filed a 44-page *pro se* Complaint on behalf of themselves and unknown persons similarly situated against AFSCME Council 31, Local 3477

1

and Unknown Persons. (Dkt. 1). The Complaint largely copied verbatim from a complaint filed by Plaintiffs and others in a separate federal suit alleging the Chief Judge of the Circuit Court of Cook County and other employees of Cook County racially discriminated against African-American Cook County Juvenile Probation Officers, *see Jordan et al. v. Chief Judge of the Circuit Court of Cook County, Illinois, et al.*, No. 15 C 5907 (N.D. Ill.), and listed six counts that collectively alleged violations of the Fourteenth Amendment, the Civil Rights Act of 1866, 42 U.S.C. § 1981, 42 U.S.C. § 1983, and Titles VI and VII of the Civil Rights Act of 1964 and the Civil Rights Act of 2004; a § 1983 *Monell* claim; and state law claims for wrongful termination and violation of due process, equal protection and employment discrimination sections of the Illinois Constitution. (*Id.*).

Defendants filed a Motion to Dismiss which the Court granted. (Dkt. 35). The parties agreed to dismiss Plaintiffs' general class allegations, class allegations specific to Title VII, Title VI claims and state law claims and the Court dismissed the remainder of the Complaint for failure to comply with the federal rules and 12(b)(6). (*Id.*). Specifically, the Court found the Complaint failed to use "numbered paragraphs, each limited a far as practicable to a single set of circumstances" as required by Rule 10(b) and failed to contain "short and plan statement of the claim" as required by Rule 8(a)(2), instead using long-winded paragraphs alleging "breach of contract," "breach of trust," and "breach of fiduciary duty" but then describing alleged civil rights violations for employment discrimination on the basis of race and disparate treatment. (*Id.*). The Court held that this lack of clarity failed to put Defendants on notice of the claims asserted against them such that they could adequately defend themselves. (*Id.*). The Court dismissed the Complaint without prejudice and permitted Plaintiffs to file an amended complaint that complies with Rule 8(a)(2). (*Id.*).

Plaintiffs then filed a bare-bones, three-page, twelve-paragraph Amended Complaint against only AFSCME Council 31, Local 3477 alleging breach of contract and possibly, if construed liberally, discrimination against minority members on the basis of race and conspiracy to violate Plaintiffs' constitutional rights. (Dkt. 36). Defendants moved to dismiss the Amended Complaint on the grounds that Plaintiffs failed to state a federal claim and the Court lacked subject-matter jurisdiction. (Dkt. 37). Plaintiffs sought leave to amend their complaint again to address the issues identified by Defendants and the Court granted their request. (Dkt. 50). Plaintiffs subsequently filed the Second Amended Complaint presently before the Court. (Dkt. 51).

## II. Second Amended Complaint

The following facts as set forth in the Second Amended Complaint are accepted as true for the purpose of reviewing Defendants' Motions to Dismiss. *Clark v. Law Office of Terrence Kennedy, Jr.*, 709 F. App'x 826 (7th Cir. 2017). The Court notes that the factual allegations in the SAC are poorly organized and arranged neither chronologically, by Plaintiff, nor by any other perceivable order; as a result, the SAC does not provide any narrative as clear as the one provided below. The following is based on the Court's best interpretation of the facts alleged, construing the SAC liberally and drawing all reasonable inferences in Plaintiffs' favor, as it must.

Plaintiffs Chapman and Nelson are both African American males and reside in Cook County, Illinois. (Dkt. 51 at ¶¶7, 9). Both are Probation Officers for Cook County and have been due-paying members of AFSCME Council 31, Local 3477 ("the Union") for 15 and 17 years, respectively. (*Id.* at ¶¶ 7–10).

In 2014, Plaintiffs' employer intentionally denied them compensation for time worked beyond normal work hours in violation of their contracts; meanwhile, Plaintiffs' white counterparts were compensated for overtime they worked. (*Id.* at ¶¶ 19, 24). At some unidentified time,

3

Plaintiffs each filed a grievance with the Union claiming they were denied compensation for time spent doing job-related training out of state while white probation officers received full compensation for similar out-of-state training but the Union ignored and never pursued their grievances. (*Id.* at ¶ 23).

In or around November 2015, Chapman and Nelson were removed from their previous positions as juvenile probation officers and replaced with two less senior officers, contravening Plaintiffs' seniority rights. (*Id.* at ¶¶ 16, 20). Chapman claims he was removed due to his involvement in the 2015 race discrimination lawsuit against the Chief Judge and other employees of Cook County. (*Id.* at ¶ 17 (citing *Jordan, et al.*, No. 15 C 5907)). The SAC never identifies the unit or program from which Nelson was removed. It states that Chapman was removed from a "very impactful Juvenile Court Program," though it also claims this removal occurred in November 2016. The SAC also never identifies to where Plaintiffs were reassigned or where they work currently. The Union did nothing in response to the removals. (*Id.* at ¶ 22).

When positions similar to those from which Plaintiffs were removed became available, their employer never notified them of the vacancy or offered the open position to them. (*Id.* at ¶¶ 22, 25). At some point, Chapman requested an "alternate position" in his former unit and his employer falsely told him no positions were available. (*Id.* at ¶ 18). In or around November 2016, a similar position became available but the employer never posted the vacancy and neither Chapman nor Nelson were notified of it. (*Id.* at ¶¶ 21, 22, 25). Their employer hired a white male to fill that position. (*Id.*). Chapman and Nelson only learned about the vacancy when the man who was eventually hired told them he received a call asking if he wanted the position. (*Id.* at ¶ 22). The Union did nothing in response. (*Id.*).

Chapman and Nelson attempted to notify the Union of their employers' "egregious actions" but the Union refused to act, to seek injunctive relief, or to enforce the provisions of the CBA on Plaintiffs' behalf. (*Id.* at ¶ 26). Plaintiffs allege that the Union committed "a breach of contract, a breach of trust, a breach of fiduciary responsibilities, fraud, bait and switch, false advertisement, and moral hazard by refusing to come to the aid of its full dues paying active member[s]." (*Id.* at ¶ 28). Plaintiffs allege further that if the Union "would have enforced the provisions they stated they would, and honored the contract they signed and entered into" with Plaintiffs, Plaintiffs would have been protected from discrimination and other unlawful acts by their employer. (*Id.* at ¶ 29 ("Mr. Nelson would have reasonably been protected from the daily ongoing discrimination, bias, contractual provisions violations by the employer and his designees, denied seniority rights, denied advancement, denied pay, and from subjection to harsher working conditions than his white co-workers.")). Plaintiffs filed charges of race discrimination with the EEOC and received right-to-sue letters on August 12, 2017. (*Id.* at ¶ 6). Plaintiffs do not provide the charges filed or the right-to-sue letters with the SAC.

The SAC then lists nine Counts, only some of which track the factual allegations and claims for relief described above:

- Count I entitled "Defendants discriminated against the Plaintiffs through voluntary actions in violation of the CBA (constitution) the defendants have with the plaintiffs" with two subsections labeled "Defendants Committed Fraud" and "Defendants Committed Bait and Switch";

- Count II with no title but citing to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, and to 42 U.S.C. § 1981;

- Count III with no title but citing to 42 U.S.C. § 1983;

- Count IV entitled "Breach of Contract" but also asserting allegation of conspiracy in violation of Title VII, 42 U.S.C. § 1981, and 42 U.SC. 1983;

- Count V entitled "Breach of Fiduciary Responsibility";

5

- Count VI entitled "Breach of Trust" but also asserting the same allegation of conspiracy in violation of Title VII, 42 U.S.C. § 1981, and 42 U.SC. 1983 as in Count IV;

- Count VII entitled "False Advertisements";

- Count VIII entitled "Moral Hazard" and asserting allegations appearing nowhere else in the SAC regarding Plaintiffs' work as union stewards; and

- Count IX entitled "Defendants Used Deceptive Practices" and asserting allegations appearing nowhere else in the SAC regarding grievances for inadequate training.

(*Id.* at 6–18).

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 10(b) requires that a party state its claims "in numbered paragraphs, each limited as far as practicable to a single set of circumstances" and that "each claim founded on a separate transaction or occurrence . . . be stated in a separate count" if doing so would promote clarity. Fed. R. Civ. P. 10(b). Rule 8(a)(2) requires further that the claims for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The primary purpose of Rules 8(a) and 10(b) "is to give defendants fair notice of the claims against them and the grounds supporting the claims." *Davis v. Anderson*, 718 F. App'x 420, 423 (7th Cir. 2017) (quoting *Stanard v. Nygren*, 658 F.3d 792, 796–97 (7th Cir. 2011)). The Court may dismiss a pleading where failure to comply with these Rules renders the complaint unintelligible. *Id.*; *see also Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946–47 (7th Cir. 2013).

"To survive a motion to dismiss under 12(b)(6), a complaint must 'state a claim to relief that is plausible on its face.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). The allegations must "raise a right to relief above the speculative level,'" *Olson v. Champaign Cty., Ill.*, 784 F.3d 1099, 1098 (7th Cir. 2015) (citing *Twombly*, 550 U.S. at 555), and "must be more than '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Id.* (citing *Iqbal*, 566 U.S. at 678). While the Court "accept[s] as true all of the well-pleaded facts . . . and draw[s] all reasonable inferences in favor of the plaintiff," *Forgue v. City of Chicago*, 873 F.3d 962, 966 (7th Cir. 2017), the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Olson*, 784 F.3d at 1099.

## DISCUSSION

### I. Failure to Comply with Rules 8(a) and 10(b)

Plaintiffs' SAC fails again to comply with Rules 8(a) and 10(b). That is not to say the SAC is not an improvement on the previous pleadings. The SAC makes better use of numbered paragraphs and at least attempts to separate Plaintiffs' claims into distinct Counts. But the result is not greater clarity; rather, the attempt at organization only confuses the matter further. The Court may dismiss a complaint where, as here, it presents only a "vague, confusing, and conclusory articulation of the factual and legal basis for the claim[s]." *Cincinnati Life Ins. Co.*, 722 F.3d at 946–47 (quoting *Stanard,* 658 F.3d at 798).

Such confusion is evident from the very first Count alleged in the SAC. Count I is entitled "Defendants discriminated against the Plaintiffs through voluntary actions in violation of the CBA (constitution) the defendants have with the plaintiffs." (Dkt. 52 at 6). This title is in itself ambiguous, first because as Defendants correctly note the CBA is not a constitution or equivalent to the United States or Illinois Constitution and second, because it is unclear from the sentence's construction whether Plaintiffs' claim is that Defendants discriminated against them in violation

7

of the CBA or discriminated in violation of some independent, unnamed statute or right by violating provisions of the CBA.

The remainder of Count I only increases the confusion. Count I contains two subsections, each purportedly setting forth separate grounds for relief: "DEFENDANTS COMMITTED FRAUD" and "DEFENDANTS COMMITTED BAIT AND SWITCH"—neither of which sound in breach of contract or discrimination as alluded to in the Count's title. (*Id.* at 6, 11). The statements in the numbered paragraphs below these subsections then meander between allegations sounding in fraud (*see, e.g., id.* at ¶ 33.iii (Defendant "knowingly made false statements of exclusive representation and protections to deceive the Plaintiffs from seeking their own protection . . .")); breach of contract (*see, e.g., id.* at ¶ 34 ("[W]e do not just sight [sic] that the CBA was violated . . .")); conspiracy to violate Plaintiffs' right to due process (*see, e.g., id.* at ¶ 33.v. ("the Union worked with management to create something called a last chance agreement" with which "African Americans were fired without any due-process")); discrimination on the basis of race (*see, e.g., id.* at ¶ 35 (The CBA "was not used, enforced or interpreted by Defendant for the benefit of African Americans.")); violation of the Railway Labor Act (*see, e.g., id.* at ¶ 41 ("Defendants are in violation of The Railway labor act . . .")); and false advertising (*see, e.g., id.* at ¶ 42 (Defendant "'baited' Plaintiffs through the advertising of a collective bargaining agreement that was supposed to protect the Plaintiffs" but the "statements and provisions advertised in the contract were false . . .")). Complaints that take such a "kitchen sink" approach to pleading violate Rule 10(b) and "frustrate Rules 8's objective [of] 'fram[ing] the issues and provid]ing] the basis for informed pretrial proceedings.'" *Cincinnati Life Ins. Co.*, 722 F.3d at 946–47. Such complaints are subject to dismissal on these grounds alone. *Id.* at 947 (affirming dismissal of complaint under 10(b) where the first claim asserted at least five separate causes of action).

Counts II and III also fail to comply with Rules 8(a) and 10(b) but for a different reason: brevity. Neither Count contains a title. Count II, alleges only that Defendant "engaged in unlawful intentional discrimination" in violation of Title VII and states that Plaintiffs are entitled to compensatory and punitive damages under § 706(g)(b) of Title VII if not under 42 U.S.C. § 1981. (*Id.* at 11–12). Count III alleges only that Defendants "violated U.S. Code > Title 42 > Chapter 21 > Subchapter 1> § 1983." (*Id.* at 12). Each also makes the same assertion regarding the EEOC process, presumably for a charge filed in relation to these alleged violations of Title VII, § 1981, and/or § 1983 although it is impossible to tell from the scarcity of the facts alleged in support of each Count:

> The EEOC assigned a mediator early in the process he said, that "the union is unwilling to negotiate. Therefore I am passing this case on to be investigated." The investigator stated that "the union is unwilling to negotiate and submitted to use the right to sue letter."

(*Id.*). Counts II and III clearly fail to put Defendant on notice of the allegations against them, including for example *how* Defendant intentionally discriminated against Plaintiffs (Count II) or deprived Plaintiffs of a constitutional right while acting under the color of law (Count III). *Cincinnati Life Ins. Co.*, 722 F.3d at 946 ("If neither the adverse party nor the court can make out the essence of the claims 'dismissal of a complaint on the ground that it is unintelligible is unexceptionable.'") (quoting *United States ex rel. Garst v. Lockheed–Martin Corp.,* 328 F.3d 374, 378 (7th Cir.2003)).

The titles of the remaining Counts suggest they each allege state-law claims: Breach of Contract (Count IV), Breach of Fiduciary Duty (V), Breach of Trust (VI), False Advertisement (VII), Moral Hazard (VIII) and "Defendants Used Deceptive Practices" (IX). These Counts present similar issues under Rule 8(a), often asserting at least two different causes of action. For example, Count IV asserting "Breach of Contract" and Count VI asserting "Breach of Trust" also

9

each assert the same allegation of conspiracy citing to various federal statutes and constitutions: Defendant "conspired with [Plaintiffs'] employer to allow disparate treatment in violation of [Title VII], [42 U.S.C. § 1981], [42 U.S.C. § 1983], and the equal protection and due process clauses of the Fifth and Fourth amendments of the U.S. Constitution and the Illinois Constitution." (*Id.* at ¶¶ 46, 50). Other of these purported state-law claims fail to cite to any statute, common law duty or other basis for relief recognized under state or federal law. (*See, e.g., id.* at 15–17 (Count VIII "Moral Hazard")).

Ultimately, the Court finds that Plaintiffs failed to comply with its previous Order directing them to file an amended pleading that complies with the federal rules. Plaintiffs simply fail "to give defendants fair notice of the claims against them and the grounds supporting the claims," *Davis*, 718 F. App'x at 423, despite being provided three chances now to do so. Therefore, the Court dismisses the Second Amended Complaint with prejudice.

## II.  Failure to Comply with Rules 12(b)(6)

It is the plaintiff's obligation when seeking relief from the Court to present his claims in compliance with the federal rules. Neither the Court nor defendant is required to sift through a noncompliant complaint to identify a plaintiff's claims and grounds for support. *See Cincinnati Life Ins. Co.*, 722 F.3d at 947 ("'[J]udges and adverse parties need not try to fish a gold coin from a bucket of mud'; dismissal is the appropriate remedy for district courts presented with 'a bucket of mud.'") (quoting *Garst*, 328 F.3d at 378). Here, however, even if it declined to dismiss the SAC under Rules 8(a) and 10(b) and went to the painstaking effort of addressing every claim it could possibly identify in a liberally-construed reading of Plaintiffs' pleading, the Court would dismiss the SAC under Rules 12(b)(6) for failure to sufficiently plead any claim for relief.

The Court identifies only three *possible* federal claims for relief in the SAC: race discrimination; conspiracy to violate Plaintiffs' statutory and constitutional rights; and violation of the Railway Labor Act.

A.  **Race Discrimination**

Plaintiff makes various assertions of discrimination against the Union throughout the SAC: Defendant "discriminated against the Plaintiffs through voluntary actions in violation of the CBA (constitution) the defendants have with the plaintiffs" (Dkt. 52 at 6); "Defendants themselves acted to deny the rights to African Americans" (*id.* at ¶ 33.v); the CBA "was not used, enforced or interpreted by the Defendant for the benefit of African Americans" (*id.* at ¶ 35); "Defendants refuse to apply the contract toward the benefit of African Americans" (*id.* at ¶ 36); "The union has an obligation under title 7 . . . to treat all of its members in a non-discriminant manner" (¶ 40); and "Defendants [] engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of disparate impact) prohibited under [Title VII]" (*id.* at 11 (Count II)). The Court construes these collectively as a claim alleging that the Union intentionally discriminated against Plaintiffs on the basis of race by failing to honor its contract with Plaintiffs, including by not properly representing Plaintiffs in the grievance process. Plaintiffs seek compensatory and punitive damages for intentional discrimination under Title VII and 42 U.S.C. § 1981. (*Id.* at 11 (Count II)).

Both Title VII and 42 U.S.C. § 1981 prohibit unions from discriminating on the basis of race in the way they represent their members. 42 U.S.C. § 2000-2(c)(1); 42 U.S.C. § 1981(b); *see Green v. Am. Fed'n of Teachers/Illinois Fed'n of Teachers Local 604*, 740 F.3d 1104, 1105 (7th Cir. 2014); *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 669 (1987); *see also, e.g., Young-Smith v. Bayer Health Care, LLC*, 788 F. Supp. 2d 792, 801 (N.D. Ind. 2011). The pleading requirements

of a racial discrimination claim under Title VII and § 1981 are essentially the same. *See Lalvani v. Cook Cty., Illinois*, 269 F.3d 785, 789 (7th Cir. 2001). Plaintiffs must show that the Union would have processed their grievances had they been white. *See Green*, 740 F.3d at 1107.

Plaintiffs fail to allege facts supporting such an inference. As an initial matter, Plaintiffs admit that that the Union pursued a grievance on its behalf to arbitration and won, weakening any inference that the Union refused to process Plaintiffs' grievances at all, let alone on the basis of race. (Dkt. 52 at ¶ 49). Additionally, Plaintiffs' conclusory statements cited above are insufficient to satisfy Rule 12(b)(6). *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) ("[L]egal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth.") (citing *Iqbal*, 566 U.S. at 678); *Olson*, 784 F.3d at 1099 (The Court is "not bound to accept as true a legal conclusion couched as a factual allegation."). The remainder of Plaintiffs' allegations focus almost entirely on alleged discrimination by their employer, which is irrelevant to the Union's liability. *See Johnson v. Int'l Longshoreman's Ass'n, Local 815 AFL–CIO*, 520 Fed. App'x. 452, 453–54 (7th Cir.2013) ("A union is liable under Title VII for discriminating against its members when performing union functions, such as job referrals, but it is not liable for an employer's actions.") (citations omitted). Therefore, Plaintiffs' claim for race discrimination, to the extent the SAC intends to assert one, fails under Rule 12(b)(6).

**B.     Conspiracy to Violate Plaintiffs' Statutory and Constitutional Rights**

In Counts IV and VI of the SAC, Plaintiffs allege that Defendant "conspired with [their] employer to allow disparate treatment in violation of [Title VII], [42 U.S.C. § 1981], [42 U.S.C. § 1983], and the equal protection and due process clauses of the Fifth and Fourth [sic] amendments of the U.S. Constitution and the Illinois Constitution." (*Id.* at ¶¶ 46, 50). Although not explicitly

12

stated, Plaintiffs' allegation sounds of a claim for conspiracy with Plaintiffs' employer to deprive them of statutory and/or constitutional rights in violation of 42 U.S.C. 1985(3).

Section 1985(3) prohibits two or more persons from conspiring "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C.A. § 1985(3); *see also Fairley v. Andrews*, 578 F.3d 518, 526 (7th Cir. 2009) ("The function of § 1985(3) is to permit recovery from a private actor who has conspired with state actors."). To prevail on a claim under § 1985(3), Plaintiffs must allege "(1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of the alleged conspiracy, and (4) an injury to person or property or a deprivation of a right or privilege granted to U.S. citizens." *Green v. Benden*, 281 F.3d 661, 665 (7th Cir. 2002). "To establish the existence of a conspiracy, a plaintiff must show that the conspirators agreed to inflict injury upon him; in other words, that they acted with a single plan, the general nature and scope of which was known to each conspirator." *Id.*

As an initial matter, the Court acknowledges but need not decide the issue as to which of violations of statutory—Title VII, § 1981, § 1983—and/or constitutional rights—equal protection under the Fifth Amendment and due process under the Fourteenth Amendment—listed by Plaintiffs can serve as a basis for a conspiracy claim under § 1985. *See, e.g., Trigg v. Fort Wayne Cmty. Sch.*, 766 F.2d 299, 301 (7th Cir. 1985) (recognizing that plaintiff may not seek to enforce Title VII through 42 U.S.C. § 1985) (citing *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 376 (1979)); *Ruiz v. Kinsella*, 770 F. Supp. 2d 936, 943 (N.D. Ill. 2011) (42 U.S.C. § 1985(3) "does not create a cause of action for a conspiracy to deny due process.") (citing *Jennings v. Nester*, 217 F.2d 153, 154 (7th Cir. 1954)). Plaintiffs' claim fails regardless because they fail

to allege that any conspiracy existed between the Union and their employer. In Counts IV and VI, Plaintiffs allege only that the attorney representing them in arbitration with the Union was not prepared for a strategic meeting leading up to the arbitration and wasted Defendants' time and money—none of which suggests communication between the Union and Plaintiffs' employer, much less a "single plan" or agreement between them. (Dkt. 52 at ¶ 46). Plaintiffs separately allege in Count I of the SAC that "the Union worked with management to create something called a last chance agreement" with which "African Americans were fired without any due process." (Dkt. 52 at ¶ 33.v). However, Plaintiffs never allege that either of them was fired or injured in any way through the use of such a "last chance agreement." The SAC alleges no other facts giving rise to a reasonable inference that the Union conspired with Plaintiffs' employer to their detriment. Therefore, to the extent they intended to do so in the first place, Plaintiffs failed to state any claim for conspiracy pursuant to 42 U.S.C. § 1985.

    C.    **Violation of the Railway Labor Act**

Plaintiffs assert in the SAC that "Defendants [sic] are in violation of the Railway labor act," citing *Steele v Louisville N.R. Co.*, 323 U.S. 192 (1944). (Dkt. 52 at ¶ 41). In *Steele*, the United States Supreme Court held that pursuant to the Railway Labor Act, any labor union acting as exclusive bargaining representative for a class of railway employees has a duty to represent all employees without discrimination because of their race. *Id.* at 204–05. To the extent Plaintiffs intended to allege a violation of the Railway Labor Act by refusing to adequately represent minority union members, the claim fails. The Railway Labor Act applies only to "carriers," including any railroad or airline or any company directly or indirectly owned by or controlled by a railroad or airline that is engaged in interstate or foreign commerce. 45 U.S.C. § 151; *see, e.g.,*

*Air Serv. Corp. v. Serv. Employees Int'l Union, Local 1*, 225 F. Supp. 3d 745, 748 (N.D. Ill. 2016). Defendant is not a "carrier" and, therefore, not subject to the Act.

Courts have since held that the the duty of fair representation recognized in *Steele* adheres equally to unions, like Defendant, that are governed by the National Labor Relations Act. *See Vaca v. Sipes*, 386 U.S. 171, 177 (1967); *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). Specifically, a union may be liable under Section 301 of the Labor Management Relations Act for violating the duty of fair representation owed to its members "only if its actions are arbitrary, discriminatory, or in bad faith." *Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 369 (7th Cir. 2003) (citing *Vaca*, 386 U.S. at 190). "[D]eclining to pursue a grievance as far as a union member might like isn't by itself a violation of the duty of fair representation." *Yeftich*, 722 F.3d at 916. "To prevail on a claim that his union violated its duty of representation by dropping a grievance, a plaintiff-member must show that the union's decision was arbitrary or based on discriminatory or bad faith motives." *Id.* (quoting *Vaca*, 386 U.S. at 177).

Here, Plaintiffs' claim under the LMRA, to the extent it exists at all, appears to allege the Union's actions in processing their grievances were discriminatory. A claim of discrimination "calls for a subjective inquiry into the union's motives." *Bishop v. Air Line Pilots Ass'n, Int'l*, 900 F.3d 388, 398 (7th Cir. 2018) (quoting *Neal*, 349 F.3d at 369). The claim "must be based on more than the discriminatory *impact* of the union's otherwise rational decision to compromise," *id.* (citation omitted); it "requires proof that the union acted (or failed to act) due to an *improper motive*." *Id*. (emphasis in original) (quoting *Neal*, 349 F.3d at 369). Moreover, "[b]are assertions of the state of mind required for the claim"—here, intentional discrimination—"must be supported with subsidiary facts." *Yeftich*, 722 F.3d at 916. As discussed above, Plaintiffs' allegations regarding the Union's discriminatory motive in allegedly failing to pursue its grievances are

15

entirely conclusory and even undermined by contradicting allegations that the Union in fact successfully arbitrated at least one grievance on their behalf. *See, e.g, id.* (dismissing claim under 12(b)(6) where "plaintiffs ha[d] not gone beyond their conclusory state-of-mind allegations"); *Jones v. Bull Moose Tube Co.*, No. 09 C 3122, 2009 WL 3483804, at *5 (N.D. Ill. Oct. 26, 2009) ("Simply refusing to introduce evidence of other black employees does not allow a reasonable inference of bad faith or discrimination—that would require at least some allegations about *why* this refusal was made.") (emphasis in original). Therefore, to the extent Plaintiffs intended to allege a claim for breach of the duty of fair representation, such claim also fails under Rule 12(b)(6).

The remaining claims asserted in the SAC sound in state law and are before the Court via supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Having found no federal basis for relief under Rule 12(b)(6), the Court would decline to exercise supplemental jurisdiction over these claims and, therefore, will not analyze now whether they are sufficiently pled. The above analysis suffices to demonstrate that the Court would dismiss the SAC under Rule 12(b)(6) even if it were to find that it complies with Rules 8(a) and 10(b).

## CONCLUSION

For the reasons stated above, the Court grants Defendant's Motion to Dismiss (Dkt. 53). Plaintiffs' Second Amended Complaint (Dkt. 52) is dismissed with prejudice.

_____
Hon. Virginia M. Kendall
United States District Judge

Date: January 16, 2019